## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIMMY GOODWIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     Civ.Act.No. 06-498-KAJ |
| | ) |
| **RICHARD KEARNEY**, Warden | ) |
| and **CARL C. DANBERG**, Attorney | ) |
| General for the State of Delaware | ) |
| | ) |
| Respondents. | ) |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In December 1988, the petitioner, Timmy Goodwin, was convicted in a Delaware Superior Court jury trial of first degree kidnapping, second degree kidnapping, and unlawful sexual intercourse. Goodwin's convictions were reversed by the Delaware Supreme Court in December 1989 because of a discovery violation. *Goodwin v. State,* 1989 WL 160436 (Del. 1988)(*Goodwin I*)(Exhibit A). Goodwin's second trial, in September 1990, ended in a mistrial. *Goodwin v. State,* 1992 WL 53432, at *1 (Del. 1992)(*Goodwin II*)(Exhibit B). In December 1990, Goodwin was tried for the third time, and convicted on all charges. *Id.* Goodwin was sentenced to two consecutive life sentences. *Id.* On appeal, the Delaware Supreme Court affirmed Goodwin's convictions and sentence. *Id.*

1

Goodwin filed a motion for postconviction relief in February 1995, which was denied by the Delaware Superior Court. *See State v. Goodwin*, I.D. No. 87004954DI (Del. Super. 1996)(*Goodwin III*)(Exhibit C).    Superior Court ruled that most of Goodwin's claims were procedurally barred by Superior Court Criminal Rule 61(i)(3) and (i)(4). *See Id.*   In turn, Goodwin's claims of ineffective assistance of counsel failed on the merits. *Id.* at 6.    Superior Court's decision in *Goodwin III* was affirmed by the Delaware Supreme Court in December 1996. *Goodwin v. State,* 1996 WL 742781 (Del. 1996)(*Goodwin IV*)(Exhibit D).

## Discussion

In his petition for federal habeas relief, Goodwin raises the following grounds for relief:  (1) he was denied a fair trial due to destruction of evidence by the State; (2) he was denied a fair trial when a juror who had read a newspaper headline mentioning the case was not disqualified; (3) counsel provided ineffective assistance at trial and on appeal; and (4) Superior Court erred by not giving the jury a missing evidence instruction. As set out below, Goodwin's claims are untimely under 28 U.S.C. §2244(d). In the alternative, the claims are meritless.

*All Claims are Untimely*

Because Goodwin's petition was filed in September 2006, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law by the President on April 24, 1996. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding the AEDPA applies to "such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d 428, 433 n.1 (D. Del. 1998); *Dawson v. Snyder*, 988 F. Supp. 783, 802-03 (D. Del. 1997). The Delaware Supreme Court affirmed Goodwin's

2

conviction and sentence in 1990. *See Goodwin II*. Because Goodwin's convictions became final prior to the enactment of AEDPA, his habeas petition must have been filed prior to April 24, 1997 to be timely under 28 U.S.C. §2244(d)(1)(A). *See Burns v. Morton,* 134 F.3d 109, 111-12 (3d Cir. 1998). Goodwin's petition, dated September 13, 2006, is obviously filed past the April 1997 deadline. The petition is thus untimely and must be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir. 1999).[1]

In turn, the tolling mechanism of §2244(d)(2) does not save Goodwin's petition from the running of the limitations period. When applicable, §2244(d)(2) tolls the one-year period of § 2244(d)(1) during the time that a properly filed state postconviction action is pending in the state courts. Goodwin's 1995 postconviction motion acted to toll the limitations period until December 12, 1996, when the state supreme court affirmed Superior Court's decision. *Downes v. Carroll,* 348 F.Supp.2d 296, 301 (D.Del. 2004). Thus Goodwin's claim must have been filed on or before December 12, 1997 to be timely. *Id.* Goodwin did not file another motion for postconviction relief. Because Goodwin has filed this federal habeas action more than eight years beyond the §2244 bar, it is untimely.

Of course, as the Court has repeatedly noted, the limitation period might be subject to equitable tolling. *See, e.g., Thomas v. Snyder,* 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001)(Exhibit E)(describing rule). Equitable tolling, however, applies only where the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir.

---

[1] Goodwin does not allege, nor can respondents discern, any reason to believe that the terms of 28 U.S.C. §2244(d)(1)(B)-(D) are applicable to any of Goodwin's claims.

1998). Here, Goodwin has failed to demonstrate or even allege any extraordinary circumstances that prevented him from filing his petition with the Court in a timely manner. Goodwin has, in fact, never been diligent in asserting his rights – he waited nearly three years after his conviction was upheld on appeal to file his motion for postconviction relief (Superior Court Criminal Docket #87004954DI at D.I. 83) and almost an additional decade to file this action. Goodwin cannot credibly allege that the legal arguments or facts were unavailable to him during the limitations period. In short, Goodwin's claims are untimely under § 2244(d), and there is no basis upon which any relevant time should be excluded by virtue of the equitable tolling doctrine.

*Claims One and Four - Destruction of Evidence*

At trial, Goodwin's victim testified that Goodwin wiped his penis on a baby blanket after raping her. (D.I. 2 at 1). The blanket was recovered by police, tested by the FBI, and determined to have semen on it which revealed the presence of the O blood group. (D.I. 2 at 3). The results were consistent with Goodwin's blood type. *Id.* Goodwin's attorneys were aware of the blanket's existence and the results of the tests conducted upon it prior to Goodwin's first trial. (D.I.2 at 2-4). After Goodwin's first trial, in which the State had not proffered the blanket as evidence, the blanket was destroyed pursuant to a general destruction order in May 1989. (Appendix to Petitioner's Motion for Postconviction Relief at A-5). At no time prior to the first trial had Goodwin requested an independent evaluation of the blanket. In Goodwin's third trial, the State introduced the evidence of the serology examination. (D.I. 2 at 23).

According to Goodwin, the destruction of the blanket violated due process. In a related claim, Goodwin argues that the trial judge should have given the jury a missing

4

evidence instruction in connection to the blanket. The State, however, was under no duty to preserve the blanket unless its exculpatory value was apparent before destruction and of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 489 (1984). Rather than exculpatory, the blanket was explicitly inculpatory – it contained semen, just as the victim stated, and that semen matched Goodwin's blood type. To simply imply that additional testing on the blanket may have produced exculpatory evidence is insufficient. *Id.* at 486. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1989).

Despite Goodwin's apparent disregard for United States Supreme Court precedent, this Court is bound by the holdings in *Trombetta* and *Youngblood*. *United States v. Gonzalez*, 907 F.Supp. 785, 792-793 (D.Del. 1995). Goodwin has not alleged any bad faith on the part of the police, nor has he alleged that the exculpatory value of the blanket was apparent to the police. As such, Goodwin is not entitled to relief on this claim. In turn, because there is no showing of bad faith, Goodwin would not be entitled to a missing evidence instruction. *See United States v. Nichols*, 912 F.2d 598, 603 (2d Cir. 1990).

*Claim Two - Juror Disqualification*

Goodwin next claims that one juror, who had read a newspaper headline mentioning Goodwin's trial, should have been removed from the jury. Superior Court described the circumstances regarding the newspaper article in *Goodwin III*:

> During the course of the trial, it came to the Court's attention that two jurors had read a newspaper article and a third juror had seen the headline

of the article. The defendant motioned to have all three jurors struck. The two jurors who read the article were excused. The third juror, during questioning by the Court, indicated that the headline made no impression on him and did not recall reading the same until it was brought to his attention by the Court.

*Goodwin III* at 6. The headline at issue read "Accused Rapist Being Tried Yet Again" (April 21, 1995 Letter in Opposition to Motion for Postconviction Relief, Exhibit A at 2). This Court uses a three part test to determine if publicity during the trial has prejudiced the jury. "First, a court determines whether the news coverage is prejudicial. Second, if it is, the court determines whether any jurors were exposed to the coverage. Third, if exposure did occur, the court examines the exposed jurors to determine if this exposure compromised their impartiality." *United States v. DiSalvo*, 34 F.3d 1204, 1221-22 (3d Cir. 1994)(*citing Waldorf v. Shuta,* 3 F.3d 705, 709 (3d Cir. 1993). It is uncontested that the juror was exposed to the headline. It is significant to note that the headline does not mention Goodwin by name. *See Barry v. Bergen County Probation Dept.*, 128 F.3d 152, 164 (3d Cir. 1997). Thus the headline itself was not objectively prejudicial to Goodwin, as it did not mention him by name.

Superior Court complied with the *DiSalvo* procedure to the letter. After learning that three members of the jury were exposed to the article in question, the court individually questioned each "exposed" juror. (April 21, 1995 Letter in Opposition to Motion for Postconviction Relief, Exhibit A at 1-9). The first two jurors, those who had actually read the article, were dismissed before deliberations began. *Id.* at 23. The third juror, who had only read the headline, indicated that the headline had made no lasting impression on him. *Id.* at 7-9. Further, the trial judge admonished the individual jurors to not discuss the nature of the questioning by the judge or the contents of the article with

anyone. *Id.* at 7. Goodwin has not challenged the juror's assurance to the court that he only read the headline of the article. Superior Court found, based on the jurors' responses during *voir dire*, that none of the three jurors held any bias. *Goodwin III* at 5-6. All of Superior Court's findings that the three jurors were impartial are presumptively correct in this action. 28 U.S.C. §2254(e)(1). *See Wainwright v. Witt*, 469 U.S. 412, 428-29 (1985); *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). Goodwin is not entitled to relief on this claim.

*Claim Three – Ineffective assistance of counsel*

Goodwin next contends that his counsel provided ineffective assistance both during trial and on appeal. As to trial counsel, Goodwin alleges that counsel failed to perform an investigation into the circumstances surrounding his charges; retain expert witnesses necessary for his defense; file an appropriate motion to suppress; promptly discover the destruction of certain evidence and; adequately advise Goodwin of the progress of the defense. Goodwin has exhausted state remedies with respect to this claim.

To prevail on a claim of ineffective assistance of counsel, Goodwin must establish that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "Where prejudice is lacking, the court need not determine whether the performance was subpar." *Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002). Goodwin merely suggests that his trial counsel failed to discover that the baby blanket had been destroyed. It is not very clear, however, and Goodwin does not explain, how counsel would have ascertained the

fact. In any event, defense counsel was informed of the destruction of the blanket in a letter dated October 12, 1990 – more than two weeks before the trial was originally scheduled to begin and two months before the trial actually began. (Appendix in Support of Petitioner's Motion for Postconviction Relief at A-5). Goodwin does not suggest how earlier discovery of this fact would have benefited his case at trial. As such, this claim must fail.

Goodwin further complains that trial counsel should have secured an expert witness to testify on his behalf about the baby blanket. Because the baby blanket had been inadvertently destroyed prior to trial, any potential expert would only have had access to the test results generated by the State. In fact, an expert contacted by Goodwin's attorneys reported that while the blanket could have been subjected to additional testing that may have proven beneficial to Goodwin before destruction, the tests conducted by the state lab found results consistent with Goodwin's blood type. (Appendix in Support of Petitioner's Motion for Postconviction Relief at A-6). Such testimony could have been elicited from State witnesses on cross-examination. Thus Goodwin has not demonstrated any prejudice from his counsel's failure to call an independent expert.

Goodwin's next claim, that his counsel was ineffective by not moving to exclude all reference to evidence obtained from the baby blanket, is not factually accurate. On November 14, 1990, trial counsel filed a motion *in limine* to exclude all evidence derived from testing of the baby blanket. (November 14, 1990 Motion *in limine*, Superior Court Criminal Docket #87004954DI at D.I. 46).

As to appellate counsel, Goodwin charges that counsel was ineffective when they did not challenge on appeal the Superior Court's refusal to suppress the baby blanket evidence. There is no constitutional right to have all nonfrivolous claims presented on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Goodwin's appellate counsel may have reasonably concluded, in their professional judgment, that any argument based on the destruction of the blanket was not likely to prevail. The only similar case, *Gibbs v. State*, 479 A.2d 266 (Del. 1984), indicated as much. Goodwin's counsel knew of the existence of the baby blanket and the results derived from its testing prior to Goodwin's first trial and declined to have it tested. That, too, totally distinguished Goodwin's case from the usual lost evidence cases. Thus any claim based on the destruction of the baby blanket would likely have failed on appeal, and Goodwin's counsel was not ineffective by failing to raise the claim on appeal.

Goodwin's final ineffectiveness claim is that appellate counsel was ineffective in not challenging Superior Court's denial of his request to excuse a juror who had read the headline of a newspaper article about the case. Because Superior Court had thoroughly investigated the claim and had, in fact, dismissed the two jurors who had actually read the article, it is unlikely that this claim would have been successful on appeal. Any challenge of Superior Court's determination would have had to rebut Superior Court's evaluation of the juror's credibility. Such determinations are not subject to review by the Delaware Supreme Court. *See, e.g., Weber v. State*, 547 A.2d 948, 953-54 (Del. 1988). Thus Goodwin's attorney was not ineffective by failing to raise this issue on appeal.

## Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of a January 25, 1990 bail reduction hearing, a November 9, 1990 evidentiary hearing, a December 6, 1990 office conference, Goodwin's first, second, and third jury trials, Goodwin's first sentencing, Goodwin's third jury charge, and verdict have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
DATE: November 13, 2006                    Del. Bar. ID No. 4612

# EXHIBIT "A"

Westlaw.

571 A.2d 786                                                                                    Page 1

571 A.2d 786, 1989 WL 160436 (Del.Supr.)
**(Cite as: 571 A.2d 786)**

Goodwin v. State Del.,1989.(The decision of the Court is referenced in the Atlantic Reporter in a ' Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Timmy GOODWIN, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 267, 1988.**

Submitted: Oct. 24, 1989.
Decided: Dec. 20, 1989.
Rehearing Denied: Jan. 10, 1990.

Superior Court, New Castle County.

REVERSED AND REMANDED.

Before MOORE, WALSH and HOLLAND, Justices.

*ORDER*
HOLLAND, Justice.
*1 This 20th day of December, 1989, it appears to the Court that:

1) The defendant-appellant, Timmy Goodwin (" Goodwin"), was convicted of Kidnapping in the First Degree, in violation of 11 *Del.C.* § 783A, Kidnapping in the Second Degree, in violation of 11 *Del.C.* § 783, and Unlawful Sexual Intercourse in the First Degree, in violation of 11 *Del.C.* § 775 by a jury in the Superior Court. On July 8, 1988, Goodwin was sentenced to life imprisonment at Level V for Kidnapping in the First Degree, a consecutive term of life imprisonment at Level V for Unlawful Sexual Intercourse in the First Degree, the first twenty years, a mandatory minimum term pursuant to 11 *Del.C.* § 4290A, and twenty years at Level V for Kidnapping in the Second Degree, to be suspended after fifteen years for five years probation at Level III. This is Goodwin's direct appeal of those convictions.

2) Goodwin alleges that his right to a fair trial was prejudiced by the State's failure to disclose a prior statement made by Goodwin, while incarcerated in Maryland, to an agent of the Federal Bureau of Investigation ("FBI"). Although that statement had been forwarded to the New Castle County police, its existence was not disclosed by the State in response to Goodwin's discovery request.

3) Goodwin's convictions resulted from events occurring at about 2:00 a.m. on July 5, 1987. At that time, it was alleged that Goodwin convinced a Maryland woman to stop her car, by flashing the headlights of his van, and then forced her to engage in various sexual acts with him. At trial, Goodwin testified that he had known the victim for about four years and that they had recently had an affair. He stated that she was upset about family problems and angry that Goodwin refused to make a commitment to her. Goodwin stated that he comforted her and gave her some cocaine. He denied having sexual intercourse or forcing her to engage in sexual acts with him.

4) After Goodwin's direct examination, the prosecutor notified the trial court that it intended to offer, for impeachment purposes, a statement made by Goodwin, while incarcerated in Maryland, to an FBI agent. The prosecutor argued that because the State did not originally intend to use the agent as a witness or to use the statement in its case-in-chief, it had no duty to disclose the substance of that statement to Goodwin, in response to the discovery request to disclose all of Goodwin's statements. The Superior Court granted the State's request.

5) While cross-examining Goodwin, the prosecutor presented him with the FBI agent's report, which contained statements that were inconsistent with Goodwin's direct testimony. During cross-examination, Goodwin was forced to admit that he "lied" to the FBI agent six times because the statements he gave to the FBI agent contradicted his direct testimony. Specifically, Goodwin testified

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

571 A.2d 786                                                                                                    Page 2

571 A.2d 786, 1989 WL 160436 (Del.Supr.)
**(Cite as: 571 A.2d 786)**

that he lied to the FBI agent about the time of his meeting with the victim; another woman's presence in the vehicle; the victim's desire to purchase drugs from him; the extent to which he entered the vehicle; statements made by him to the victim concerning drugs; and his sexual relationship with the victim. The record reflects that with the use of Goodwin's statement to the FBI agent, the prosecutor effectively and thoroughly impeached Goodwin's credibility.

*2 6) Based on our review of the transcript, we do not find that Goodwin's present claim, that of a discovery violation, was presented to the trial court. [FN1] Unless there is plain error, this Court will not review claims that were not fairly presented to the trial court. Supr.Ct.R. 8; *Wainwright v. State,* Del.Supr., 504 A.2d 1096, 1100 (1986). *See* D.R.E. 103; *Weber v. State,* Del.Supr., 457 A.2d 674 (1983) (Generally, if a defendant fails to raise a timely objection in the trial court, he will be deemed to have waived it). These guidelines apply with equal vigor to those asserting violations of discovery rules. *Johnson v. State,* Del.Supr., 550 A.2d 903, 910 (1988). *See also Rose v. State,* Del.Supr., 542 A.2d 1196 (1988). Therefore, Goodwin must demonstrate plain error. *DeShields v. State,* Del.Supr., 534 A.2d 630, 644-45 (1987). Goodwin has sustained that burden.

7) We find that the trial court's decision to allow the prosecutor to impeach Goodwin with a prior statement which had not been disclosed to him, constituted plain error based on our recent holding in *Johnson v. State,* Del.Supr., 550 A.2d 903 (1988). [FN2] Superior Court Criminal Rule 16(a) requires the State, upon request, to disclose the substance of any oral statement made by the defendant which it intends to offer if such statement was made to anyone the defendant knew to be a state agent and if the statement is within the possession, custody, or control of the State. "If the State wishes to use a discoverable statement at any time, it must have disclosed it to the defense pursuant to a proper discovery demand." *Johnson v. State,* 550 A.2d at 913. "To permit the prosecution to withhold a defendant's oral statements from discovery, and then use them in rebuttal, would unfairly penalize a defendant who chose to testify." *I d.* " If there had

been full responses to discovery demands, the defendant might have availed himself of his constitutional right to remain silent." *Id.*

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, REVERSED and this matter is REMANDED for a new trial.

> FN1. It is not completely clear from the transcript, but counsel for Goodwin appeared to object to use of the statement on grounds of hearsay because the declarant was unavailable for cross-examination. When Goodwin's counsel did not press the objection, the trial judge allowed the State to impeach Goodwin with the statement.

> FN2. *Johnson* did not change the discovery rules; it applied Superior Court Criminal Rule 16. Therefore, the *Johnson* test is properly applied to Goodwin's case, which was tried before this Court decided *Johnson.*

Del.,1989.
Goodwin v. State
571 A.2d 786, 1989 WL 160436 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT "B"

Westlaw.

608 A.2d 727                                                                    Page 1

608 A.2d 727, 1992 WL 53432 (Del.Supr.)
**(Cite as: 608 A.2d 727)**

▷
Goodwin v. StateDel.,1992.(The decision of the
Court is referenced in the Atlantic Reporter in a '
Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Timmy GOODWIN, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 111,1991.**

Submitted: Feb. 11, 1992.
Feb. 27, 1992.

Court Below: Superior Court of the State of
Delaware in and for New Castle County, Cr.A. Nos.
IN87-07-0835, 0836, and 0837.
Superior Court, New Castle County

AFFIRMED.

Before MOORE, WALSH and HOLLAND,
Justices.

*ORDER*
HOLLAND, Justice.
**\*1** This 27th day of February, 1992, upon
consideration of the briefs of the parties, it appears
to the Court that:

(1) The appellant, Timmy Goodwin ("Goodwin"),
was convicted of Kidnapping First Degree,
Kidnapping Second Degree and Unlawful Sexual
Intercourse in February of 1988. These
convictions were reversed by this Court on appeal
due to a discovery violation by the State. *Goodwin
v. State,* Del.Supr., No. 267, 1988, Holland, J. (Dec.
20, 1989) (ORDER). The case was retried before a
jury in September of 1990. However, the jury was
unable to agree on a verdict and a mistrial was
declared. The case was retried again before a jury
in December of 1990 at which time Goodwin was
convicted of all offenses charged. After being

sentenced to consecutive life terms of
imprisonment, Goodwin appeals from these
convictions.

(2) Goodwin was accused of kidnapping the victim
and her sixteen month old daughter by
commandeering the victim's car in the early
morning hours of July 5, 1987 and forcing the
victim to engage in oral sexual intercourse with
him. At trial, the victim testified that she and
Goodwin were strangers. Goodwin, on the other
hand, claimed that the victim and he had engaged in
sex numerous times in the weeks prior to July 5 in
exchange for his providing her with drugs. He
contended she had fabricated the story of her
abduction and rape after he told her he could no
longer continue the relationship because he was
returning to his estranged wife. He also presented
an alibi defense.

In this appeal, Goodwin makes three claims of
error. He contends the trial court erred by
admitting the victim's out-of-court statement
pursuant to 11 *Del.C.* § 3507, by permitting the
State's fingerprint expert to express an opinion as to
the age of fingerprints of the defendant found in the
victim's car, and by admitting certain rebuttal
testimony and allowing the prosecutor to comment
on it during his summation. Finding no merit to
these contentions, we affirm.

(3) Goodwin first contends the trial court erred by
admitting into evidence a tape recorded statement of
the victim made by the police shortly after the
incident. On direct examination, the victim
testified extensively regarding her version of the
episode but, as to the recording, merely identified a
document as being a transcript of the recorded
statement she gave to the police. Later, however,
near the end of its case, the State introduced the
recording into evidence through the officer who
took the statement. The recording was then played
for the jury.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

608 A.2d 727                                                                                    Page 2

608 A.2d 727, 1992 WL 53432 (Del.Supr.)
**(Cite as: 608 A.2d 727)**

Goodwin objected to admission of the statement into evidence, claiming lack of foundation under 11 *Del.C.* § 3507.[FN1] His contention, repeated here, is that the out-of-court statement was inadmissible because the State failed to adequately question the victim on direct examination and because he was not provided with a sufficient opportunity to cross-examine her. We review this claim under an abuse of discretion standard. *Gray v. State,* Del.Supr., 441 A.2d 209, 222 (1981).

**\*2** We have construed Section 3507 as requiring the proponent of an out-of-court statement to actually produce the declarant and examine her in a way that touches both the events recounted by the statement and the making of the statement itself. *Johnson v. State,* Del.Supr., 338 A.2d 124 (1975). Furthermore, the adverse party must be given the opportunity to cross-examine the declarant. *Id.* The purpose of this rule is not to require the State to present any particular type of substantive evidence. Rather, its aim is to assure that the non-tendering party has an adequate opportunity to test the reliability of a statement made outside the scrutiny of the jury. *Ray v. State,* Del.Supr., 587 A.2d 439, 444 (1991).

Here, the victim, the declarant of the out-of-court statement, testified extensively concerning the events of July 5, 1987, and was cross-examined in depth regarding those events. The factual allegations contained in the statement did not significantly differ from the victim's recitation in court. Moreover, the trial judge informed Goodwin's counsel during trial that he would allow Goodwin to call the victim during the defense case in order to examine her regarding the statement which, by that time, had been played for the jury.

It is clear that the victim was examined extensively regarding the substance of the out-of-court statement and then questioned in a way that at least touched on the making of the statement itself. At that point, the door was open to Goodwin. Goodwin's counsel then thoroughly tested the victim's story on cross-examination. Though he never cross-examined the victim concerning the making of the statement itself, he had ample opportunity to cross-examine the officer who took

the statement and to recall the victim as a hostile witness in his own case. Although the preferred practice is to introduce the out-of-court statement during the declarant's direct testimony this may not be feasible if the testimony of other witnesses is required to authenticate the statement. As long as the voluntariness of the statement is established and an opportunity to cross-examine the declarant is afforded, the timing of the presentation of the statement is within the sound discretion of the trial judge. We find no abuse of that discretion here.

Finally, we note that this was Goodwin's third trial at which the victim's statement has been presented. Goodwin knew about the statement and exactly what it contained. He makes no claim of surprise concerning the content of the statement or the manner of its recordation. Given the ample opportunity provided Goodwin to test the victim on the statement, we can only conclude that his failure to call her as a hostile witness was a tactical choice to refrain from further testing the reliability of that piece of evidence.

(4) Goodwin next complains the trial court erred by allowing the State's fingerprint technician to testify as to the age of certain fingerprints of Goodwin found in the victim's car. The technician testified that he could classify fingerprints into two age groups: "recent" and "older." He defined recent fingerprints as being left within the past 24 hours and asserted that, based on his experience, recent fingerprints absorbed powder differently than older ones. He concluded that the prints found in the victim's car were recent, thereby rebutting Goodwin's alibi and bolstering the State's position. Goodwin claims that allowing the technician to testify in this way was an abuse of discretion because the witness lacked the required expertise, as required by D.R.E. 702, and because the technician could not provide a valid scientific basis for his conclusions, as required by D.R.E. 705.

**\*3** We have recently rejected these same arguments in our decision of *Royal v. State,* Del.Supr., No. 54, 1990, Horsey, J. (Feb. 4, 1992) (ORDER), and do so again here. Goodwin was free to pursue, and did in fact, the shortcomings of this evidence on cross-examination, including the absence of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

608 A.2d 727                                                                                          Page 3

608 A.2d 727, 1992 WL 53432 (Del.Supr.)
**(Cite as: 608 A.2d 727)**

scientific literature and unavailability of formal training regarding the "dating" of fingerprints. Such shortcomings go to the weight of the evidence, not its admissibility. *See Royal,* slip op. at 2.

We also note, however, that even if the admission of this evidence were to be ruled improper, the error here would be harmless beyond a reasonable doubt. In an apparent attempt to find a way out of the legal predicament occasioned by the charges in this case, Goodwin contacted the F.B.I. and offered to exchange information regarding an individual who dealt illegally in weapons and drugs in exchange for that organization's assistance in making the charges "go away." In his statement to an F.B.I. agent, Goodwin placed himself in the victim's car on the night of July 4, 1987. This was precisely the proposition the State was asserting by introducing the age of the fingerprints. It is clear, then, that even if the admission of that evidence were to be considered improper, its admission was harmless.

(5) Finally, Goodwin argues the trial court erred by allowing the State to introduce certain rebuttal evidence and by allowing it to argue that testimony in its rebuttal summation. We review these claims under an abuse of discretion standard. *Gatson v. State,* Del.Supr., 234 A.2d 324 (1967).

In its rebuttal case, the State produced an acquaintance of Goodwin, Cheryl Everett ("Everett" ), in order to counter Goodwin's alibi defense. During direct examination of Everett, she at various times connected Goodwin to a white van on the night of the crime. In its case in chief, the State had elicited testimony from the victim that her assailant drove a white van but never further connected the van to Goodwin. Goodwin now claims it was error for the trial court to allow this new evidence, the connection between Goodwin and the van, during the rebuttal phase of the trial. We disagree.

The State produced Everett in order to rebut an alibi offered by Goodwin during his defense. This was clearly proper. The fact that such testimony also bolsters the State's case in chief does not render it inadmissible. *Gatson,* 234 A.2d at 325. The trial court therefore acted properly in allowing the

testimony and in refusing to grant a mistrial.

Goodwin also argues it was error to allow the State to use the testimony regarding the white van in its rebuttal summation since neither he nor the State had mentioned the van during their principal summations. However, Goodwin did argue his alibi to the jury. It was therefore permissible for the State to discuss any rebuttal evidence during its rebuttal summation. The State's fleeting reference to a white van during that discussion, a reference to clearly admissible evidence, was simply part of that rebuttal evidence. As such, we believe there was no abuse of discretion in allowing it.

**\*4** NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

> FN1. That section states, in part:
> (a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

Del.,1992.
Goodwin v. State
608 A.2d 727, 1992 WL 53432 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT "C"

_6-09

092 ₥

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE            )
                             )    I.D. #87004840I
            v.               )
                             )    CR. A. NOS.: 87-07-0835 thru 0837
TIMMY GOODWIN                )

# **ORDER**

    This 13th day of June, 1996, having had the opportunity to consider the motion for postconviction relief pursuant to Superior Court Criminal Rule 61 and the supporting memoranda filed by Timmy Goodwin, the Defendant herein, as well as the response by the State of Delaware thereto, the Court concludes as follows:

    1. Defendant was convicted by a jury of Kidnapping First Degree, Kidnapping Second Degree and Unlawful Sexual Intercourse on February 9, 1988.  The Delaware Supreme Court reversed those convictions because of discovery violations by the State. Goodwin v. State, Del. Supr., No. 267, 1988, Holland, J. (Dec. 20, 1989) (Order).  On September 25, 1990, the case was retried before a jury.  The jury was unable to reach a verdict and a mistrial was declared.  The third trial began on December 10, 1990.  The jury returned a verdict of guilty on all charges.  On February 22, 1991, Defendant was sentenced to two consecutive life terms at Level 5. He appealed these convictions to the Delaware Supreme Court on September 27, 1991, which affirmed the same. Goodwin v. State, Del.

CERTIFIED AS A TRUE COPY
ATTEST SHARON AGNEW
PROTHONOTARY
BY

Supr., No. 111, 1991, Walsh, J. (Feb. 27, 1992) (ORDER).

2. The Defendant has raised a number of challenges to his last trial and the resulting conviction which may be segregated into three categories. The first category revolves around a baby blanket which allegedly contained evidence relevant to the charges raised against the Defendant. Specifically, he alleges that he was denied a fair trial because the State failed to preserve evidence that would have exonerated him and did not instruct the jury of its existence or impact on the charges against the Defendant. Notwithstanding those omissions, the Defendant further complains that the Court made matter worse by allowing the State to introduce the results of tests on that blanket into evidence against him. Second, the Defendant argues that the Court erred as a matter of law when it failed to disqualify a juror who had been exposed to a newspaper article concerning the trial. Third, he argues that he was denied effective assistance of counsel in violation of his right to counsel as guaranteed by the United States and Delaware State Constitutions.

3. In addition to the aforementioned claims, the Defendant has asked this judge to recuse himself from any further involvement in this matter because he would not be able to receive a "full and fair hearing" otherwise. More specifically, in his opening memoranda in support of his petition, the Defendant argues:

> Furthermore, the procedure of any action filed under Supr. Ct. Crim. Rule 61 [sic], if for the action to go before the judge that originally resided [sic] over the case, in his particular situation the second and third trial was under the same judge that is to hear

2

> this action.  The defendant, in the interest
> of justice, demands that this action be
> assigned to a judge that has not resided [sic]
> over the case in any manner and presents
> grounds in this action that puts forth
> accusations of unethical and illegal act, and
> in this alone "reasonable probability" and
> "reasonable likelihood" of prejudice against
> the defendant exists [sic].

Op'g Br. at 2.  Consequently, before discussing the merits of Mr.

Goodwin's motion, to avoid any possible taint to these proceedings,

the Court must first address the issue of whether recusal is

appropriate under the circumstances.

4. In that regard, the Defendant cites <u>Benson v. State</u>, Del.

Supr., 395 A.2d 361 (1978).  At issue in <u>Benson</u> was whether

admission of unsubstantiated evidence of prior bad acts deprived

that defendant of due process of law as guaranteed by both the

United States and Delaware State Constitutions, thereby undermining

the integrity of the trial.  Nothing in that decision required a

judge to recuse when assigned consideration of a postconviction

motion because he was the judge during the defendant's jury trial.

5. The appropriate source of guidance on this issue is found

in the Delaware Judges' Code of Judicial Conduct.  The relevant

portion reads:

> C. Disqualification.
> (1) A judge should disqualify himself in a
> proceeding in which his impartiality might
> reasonably be questioned, including but not
> limited to instances where:
> > (a) The judge has a personal bias or
> > prejudice concerning a party, or
> > personal knowledge of disputed
> > evidentiary facts concerning the
> > proceeding . . . .

Del. Judges' Code of Judicial Conduct, Canon 3C(1) (1987).  A judge

3

is not automatically disqualified simply because he has made adverse rulings against a party in previous proceedings. <u>Steigler v. State</u>, Del. Supr., 277 A.2d 662, 668 (1971). "To be disqualified the alleged bias or prejudice of the judge must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." <u>Los v. Los</u>, Del. Supr., 595 A.2d 381, 384 (1991).

6.  The examination of this claim consists of a two part analysis.    First, the judge must believe that he can hear the matter without bias or prejudice to the objecting party.    Second, there must be an absence of the appearance of bias sufficient to cause doubt as to the judge's impartiality. <u>Id.</u> at 384-385.    If both of these prongs are satisfied, the judge is not required to disqualify himself.

7. The record is devoid of any indication that this judge had or has any bias for or against the Defendant.    In addition, the undersigned affirmatively states that none exists nor is there the appearance of any such bias.    It should be further pointed out that this judge is the third member of the Superior Court to preside over the trial of the charges in question against the Defendant, and did not, contrary to what the Defendant has alleged, preside over the second trial as well as the third.    Judge Gebelein presided over the first trial and Judge Babiarz, the second trial. Given these circumstances, it is readily apparent that recusal is not appropriate and the Court will now turn to the individual challenges raised in the Defendant's petition.

4

8. The Defendant's attack on his conviction, to the extent based upon the alleged failure by the State to preserve the baby blanket and the failure to excuse a juror who read a newspaper article concerning the trial, must be rejected in light of Rule 61(i)(4). That provision of Rule 61 reads:

> Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, . . . , is thereafter barred, unless reconsideration is warranted in the interests of justice.

9. The Defendant argues that the State intentionally destroyed a baby blanket because it did not have his semen on it. The introduction of the results of testing done on the blanket prior to its destruction, Defendant claims compounded the problem. That contention and objection were raised and dispensed by this Court on December 10, 1990 when the Defendant's motion _in limine_ was heard. The Defendant has not presented any rationale which would justify reconsideration and this Court has not been able to discern any during the course of its examination of the record. Accordingly, this contention too is barred by Rule 61(i)(4).

10. Similarly situated is the Defendant's claim that he was denied a fair and impartial trial because a juror was not excused as requested. During the course of the trial, it came to the Court's attention that two jurors had read a newspaper article on the case and a third juror had seen the headline of the article. The Defendant motioned to have all three jurors struck. The two jurors who read the article were excused. The third juror, during questioning by the Court, indicated that the headline made no

5

impression on him and did not recall reading the same until it was brought to his attention by the Court. He was not excused based upon that response. The Defendant argues that the failure to do so undermined the integrity of the trial. Because the Court resolved this issue during the trial and the Defendant has not provided any information not already of record that would justify reconsideration, this claim too must fall in light of the language of Rule 61(i)(4).

11. To establish that his counsel was ineffective a defendant must show "that counsel's performance fell below an objective standard of reasonableness" and that there is a reasonable probability that counsel's errors were outcome determinative. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). The defendant must also identify the acts or omissions of counsel upon which his claim is based. Id. at 690. Conclusory statements are insufficient. Younger, 580 A.2d at 555. This Defendant's only statement in support of this argument is that he was not consulted to determine his ideas on the strategy to be employed in his appeal to Delaware Supreme Court. However, he has failed to demonstrate that this alleged omission fell below the objective standard of reasonableness or how the outcome of the case would have been different had counsel's alleged failing been avoided as required by Strickland. He has not, as a consequence, been able to establish a violation of his Sixth Amendment right to counsel.

12. The Defendant's claim that the Court erred because it failed to give a certain jury instruction must be viewed in light

6

of Rule 61(i)(3).  It mandates that:

> Any ground for relief that was not asserted in
> the proceedings leading to the judgment of
> conviction, as required by the rules of this
> court, is thereafter barred, unless the movant
> shows (A) Cause for relief from the procedural
> default and (B) Prejudice from violation of
> the movant's rights."

"Cause" requires the defendant to identify an "external impediment"

that prevented him from making the claim at the prior proceeding.

Younger, 580 A.2d at 556.  Once "cause" is established, the

defendant must prove "prejudice" by a demonstration that there is

a "substantial likelihood" that the outcome would have been

different. Flamer v. State, Del. Supr., 585 A.2d 736, 748 (1990).

13. The Defendant did not raise this issue during his appeal to

the Delaware Supreme Court.  He did not do so, he explains because

his attorney was ineffective, and that ineffectiveness was the

proximate cause of the aforementioned default.  Since this claim

has been determined to be without merit above, it can not be deemed

to be the "external impediment" for purposes of establishing

"cause".  That being the case, the Court need not go any further

the analysis under this provision, but must conclude instead that

the Defendant is procedurally barred from establishing this claim

under Rule 61(i)(3).

14.  However, the Defendant may still be able to assert this

claim if he is able to meet the requisites of Rule 61(i)(5).  That

section provides:

> The bars to relief in paragraphs (1), (2), and
> (3) of this subdivision shall not apply to a
> claim that the Court lacked jurisdiction or to
> a colorable claim that there was a miscarriage

7

> of justice because of a constitutional
> violation that undermined the fundamental
> legality, reliability, integrity or fairness
> of the proceedings leading to the judgment of
> conviction.

Because the Defendant has not alleged that this Court lacks jurisdiction, whether his contentions can be heard on the merits is dependent upon whether they fall within the aforementioned "fundamental fairness" exception.

15. The fundamental fairness exception is construed very narrowly and the burden of proof is upon the defendant to demonstrate that a substantial constitutional right has been violated. Younger, 580 A.2d at 555. This Defendant has nowhere identified, nor has he been able to establish the existence of a substantial constitutional right which was violated. The Court must therefore conclude that Rule 61(i)(5) does not apply and the procedural bar of Rule 61(i)(3) remains in place as to this claim.

16. The Defendant has failed to meet the burden of establishing that he is entitled to the relief sought. His petition must be, and hereby is, **DENIED** as a result.


**IT IS SO ORDERED.**

_____
TOLIVER, JUDGE

8

# EXHIBIT "D"

Westlaw.

687 A.2d 572                                                    Page 1

687 A.2d 572, 1996 WL 742781 (Del.Supr.)
**(Cite as: 687 A.2d 572)**


Goodwin v. StateDel.Supr.,1996.(The decision of
the Court is referenced in the Atlantic Reporter in a
'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Timmy GOODWIN, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 297, 1996.**

Submitted Dec. 10, 1996.
Decided Dec. 12, 1996.


Court Below-Superior Court of the State of
Delaware, in and for New Castle County, Cr.A.
Nos. IN87-07-0836 thru 0837.
Superior Court, New Castle County

AFFIRMED.


Before WALSH, HOLLAND, and BERGER, JJ.

ORDER
HOLLAND, Justice.
*1 This 12th day of December, 1996, the Court
having considered this matter on the briefs filed by
the parties, and having concluded that the same
should be affirmed on the basis of and for the
reasons assigned by the Superior Court in its
decision dated June 13, 1996.

NOW, THEREFORE, IT IS HEREBY ORDERED
that the judgment of the Superior Court be, and the
same hereby is,

AFFIRMED.

Del.Supr.,1996.
Goodwin v. State
687 A.2d 572, 1996 WL 742781 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT "E"

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Thomas v. SnyderD.Del.,2001.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Kevin A. THOMAS, Petitioner,
v.
Robert W. SNYDER, Warden, and Attorney General of the State of Delaware, Respondents.
**No. CIV.A. 98-597-GMS.**

Nov. 28, 2001.

### MEMORANDUM AND ORDER

SLEET, District J.
*1 Kevin A. Thomas was convicted of first degree murder and possession of a deadly weapon during the commission of a felony. He is presently incarcerated in the Delaware Correctional Center in Smyrna, Delaware, where he is serving a sentence of life imprisonment. Thomas has filed with this court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As explained below, the court will dismiss Thomas' petition as time barred by the one-year period of limitation prescribed in 28 U.S.C. § 2244(d).

### I. BACKGROUND

On June 28, 1993, following a jury trial in the Delaware Superior Court, Kevin A. Thomas was convicted of first degree murder and possession of a deadly weapon during the commission of a felony. The evidence at trial demonstrated that on September 13, 1992, Thomas shot David Turner in the face and killed him. Thomas was seventeen years old at the time. He was sentenced to life in prison without parole on the murder conviction and to a consecutive sentence of five years in prison on the weapons conviction. The Delaware Supreme Court affirmed Thomas' conviction and sentence on September 21, 1994.

On December 18, 1996, Thomas filed in state court a motion for post-conviction relief pursuant to Rule 61 of the Delaware Superior Court Criminal Rules. The trial court summarily dismissed Thomas' Rule 61 motion on December 23, 1996. Thomas appealed to the Delaware Supreme Court. His subsequent motion to withdraw the appeal was granted on March 11, 1997. Thomas filed a second Rule 61 motion for post-conviction relief on March 27, 1997, which was summarily dismissed on May 9, 1997. Again, Thomas appealed to the Delaware Supreme Court. The Court affirmed the order of dismissal on November 24, 1997.

Thomas has now filed with this court the current petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition Thomas articulates four separate grounds for relief: (1) The searches of his residence and car were in violation of the Fourth Amendment, and all evidence seized from these searches should have been suppressed; (2) The trial court erred in admitting identification testimony that was the result of an impermissibly suggestive photographic identification procedure; (3) The trial court violated his constitutional right to due process by giving a supplemental jury instruction pursuant to *Allen v. United States,* 164 U.S. 492 (1896); and (4) His constitutional rights were violated when police questioned him without a parent or legal guardian present. The respondents argue that the petition is subject to a one-year period of limitation that expired before Thomas filed it. Thus, they request that the court dismiss the petition as time barred.

### II. DISCUSSION

#### A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress amended the federal habeas statute by prescribing a one-year

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

period of limitation for the filing of § 2254 habeas petitions by state prisoners. *Stokes v. District Attorney of the County of Philadelphia,* 247 F.3d 539, 541 (3d Cir.2001). Effective April 24, 1996, the AEDPA provides:

**\*2** (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C. § 2244(d)(1). In order to avoid any impermissible retroactive application of the one-year period of limitation, state prisoners whose convictions became final prior to the enactment of the AEDPA were allowed to file their § 2254 petitions no later than April 23, 1997. *See Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998) (prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Thomas' conviction became final prior to the enactment of the AEDPA. He was convicted on June 28, 1993. The Delaware Supreme Court affirmed the judgment of conviction on September 21, 1994. Thomas was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Supreme Court Rule 13. Although Thomas did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of " the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Thomas' conviction became final on December 20, 1994, ninety days after the Delaware Supreme Court affirmed his conviction, and well before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns,* 134 F.3d at 111.

Ascertaining the precise date Thomas filed his habeas petition with the court is somewhat problematic. The court's docket reflects that the petition was filed on October 21, 1998, the date the clerk's office received his petition and filing fee. A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court receives it. *Id.* at 113. Thomas has provided the court with no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated August 10, 1998. The respondents maintain that the filing date is October 8, 1998, but they provide no documentation to support this conclusion. Under these circumstances, the court will extend Thomas every benefit of the doubt and will consider his habeas petition filed on August 10, 1998, the earliest possible date he could have delivered it to prison officials for mailing.

**\*3** Obviously Thomas' habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not end the inquiry because § 2244(d) 's period of limitation may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Thomas filed in state court a Rule 61 motion for post-conviction relief on December 18, 1996, which the Superior Court summarily dismissed on December 23, 1996. As previously noted, Thomas appealed from the order of dismissal. His subsequent motion to withdraw the appeal was granted on March 11, 1997. The respondents concede, and correctly so, that the filing of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 3

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

motion for post-conviction relief tolled the period of limitation. Thus, the period of time from December 18, 1996, through March 11, 1997, does not count toward the one-year period of limitation. FN1

> FN1. The court notes that the one-year period is tolled during the time between the Superior Court's dismissal of Thomas' Rule 61 motion and his timely appeal to the Delaware Supreme Court. *See Swartz v. Meyers,* 204 F.3d 417, 420 (3d Cir.2000).

Thomas filed a second Rule 61 motion for post-conviction relief in state court on March 27, 1997, which was summarily dismissed on May 9, 1997. The Delaware Supreme Court affirmed the dismissal on November 24, 1997. Again, the respondents concede that the filing of the second Rule 61 motion tolled the period of limitation. FN2 Thus, the period of time from March 27, 1997, through November 24, 1997, is excluded from the one-year limitation period. FN3

> FN2. Only a "properly filed application" for post-conviction review tolls the one-year period under § 2244(d)(2). Whether Thomas' second Rule 61 motion constitutes a "properly filed application" is subject to debate. Under Rule 61, "[a]ny ground for relief that was not asserted in a prior postconviction proceeding ... is thereafter barred." Super. Ct. R.Crim. P., Rule 61(i)(2). This procedural bar, however, is inapplicable where a motion raises "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." *Id.,* Rule 61(i)(5). The court need not, and does not, address whether Thomas' second Rule 61 motion was a "properly filed application" because the respondents concede that the one-year period was

tolled while the second Rule 61 motion was pending. Regardless, as discussed herein, Thomas' habeas petition is untimely.

> FN3. Thomas could have filed, but did not file, a petition for a writ of certiorari with the United States Supreme Court within ninety days of the Delaware Supreme Court's order. *See* Supreme Court Rule 13. As explained above, on direct review that ninety-day period is excluded from the one-year period of limitation. *See Kapral,* 166 F.3d at 576. In post-conviction proceedings, however, the time during which a state prisoner may file a petition in the United States Supreme Court does *not* toll the one-year period, and the ninety-day period is counted. *Stokes,* 247 F.3d at 543.

Nonetheless, since the date of the enactment of AEDPA, more than one year has passed during which statutory tolling does not apply. First, from April 24, 1996, through December 17, 1996, a period of 238 days, no post-conviction proceedings were pending, and those 238 days are included as part of the one-year period. In addition, from March 12, 1997, through March 26, 1997, no post-conviction relief proceedings were pending, and those fourteen days must be counted. Finally, from November 25, 1997, through August 9, 1998, a period of 258 days, no motion for post-conviction relief was pending, and those 258 days must be counted.

In sum, following the enactment of the AEDPA, 510 days lapsed during which Thomas had no post-conviction proceedings pending for purposes of § 2244(d)(2). This period of time, well in excess of one year, must be counted. The court thus concludes that while the statutory tolling provision applies to certain portions of time since the enactment of the AEDPA, it does not render Thomas' habeas petition timely filed.

### C. Equitable Tolling

Additionally, the one-year period of limitation prescribed in § 2244(d) may be subject to equitable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

tolling. *Fahy v. Horn,* 240 F .3d 239, 244 (3d Cir.2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:

\*4 only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159, *quoting United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998).

In the instant case, Thomas argues that the AEDPA's one-year period of limitation is at odds with the three-year period allowed for filing a Rule 61 motion for post-conviction relief. He contends that because Delaware allows three years in which to file a Rule 61 motion, and petitioners are required to exhaust state remedies before filing habeas petitions in federal court, it is unfair to apply the AEDPA's one-year period of limitation, rather than Delaware's three-year period.

Although Thomas is correct that Delaware generally allows three years in which to file a Rule 61 motion, *see* Super. Ct. R.Crim. P., Rule 61(i)(1), the court is unimpressed by his equitable tolling argument. As explained above, the court has applied § 2244(d)(2) 's tolling provision to exclude the periods of time during which his two post-conviction proceedings were pending before the state courts. These periods of time do not count against Thomas. There is nothing unfair or inequitable in applying the AEDPA's one-year period of limitation to petitioners who wait more than a year before filing a habeas petition in federal court, even if the Delaware rule permits a longer period of time in which to file Rule 61 motions.

More important, Thomas has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition with this court in a timely manner. Indeed, he has failed to offer *any* explanation for the delay. He has not provided the court with any reason why, after the AEDPA was enacted, he waited until December 18, 1996, to file his first Rule 61 motion. He has not explained why, after his second Rule 61 proceedings were completed on November 24, 1997, he waited until August 10, 1998, to file his habeas petition with this court.

In short, the court cannot discern any extraordinary circumstances that warrant applying the doctrine of equitable tolling. Thomas' habeas petition will be dismissed as untimely.

### D. Motion for Appointment of Counsel

In a letter to the court dated April 16, 2000, Thomas inquired respecting appointment of counsel in this matter. The court construes this letter as a motion for appointment of counsel. The Sixth Amendment right to counsel does not extend to habeas proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). Additionally, the court has determined that Thomas' habeas petition will be dismissed as untimely. Accordingly, Thomas' letter dated April 16, 2000, construed as a motion for appointment of counsel, will be denied as moot.

### III. CERTIFICATE OF APPEALABILITY

\*5 Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Thomas' habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled to render the petition timely. The court is convinced that reasonable jurists would not debate otherwise. Thomas therefore cannot make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Thomas' petition for a writ of habeas corpus pursuant to 28 U .S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.

2. Thomas' letter dated April 16, 2000, requesting appointment of counsel, is construed as a motion for appointment of counsel, and so construed, is DENIED as moot.

3. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

D.Del.,2001.
Thomas v. Snyder
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2006, I electronically filed the attached

documents with the Clerk of Court using CM/ECF.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date:  November 13, 2006